**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **SHELL JACKSON,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 15-3829** |
| v. | * | |
| | * | |
| | * | |
| **NANCY A. BERRYHILL,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.**[1] | * | |
| ************ | | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Shell Jackson seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 18).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

for Summary Judgment (ECF No. 18) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

**I**

**Background**

Plaintiff was born in 1962, has a high-school education, and previously worked as a program management analyst and payroll clerk. R. at 20-21. Plaintiff protectively filed an application for DIB on February 3, 2012, alleging disability beginning on August 1, 2008, due to, among other things, fibromyalgia, sleep apnea, diabetes, pain, high blood pressure, liver disorder, and fatigue. R. at 14, 136-39, 160, 172. The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 43-66, 69-72. On April 22, 2014, ALJ Jeffrey M. Jordan held a hearing at which Plaintiff and a vocational expert ("VE") testified. R. at 23-42. On May 29, 2014, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of August 1, 2008, through the date last insured of December 31, 2013. R. at 11-22. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on October 16, 2015. R. at 1-10. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On December 16, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

The Court reviews here and in Part VI below Plaintiff's relevant medical evidence.

**A.     State Agency Medical Consultants**

On April 11, 2012, a state agency medical consultant, S.K. Najar, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 48-49. Dr. Najar opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 48. Plaintiff frequently could balance, and she occasionally could climb, stoop, kneel, crouch, and crawl. R. at 48-49. Although Plaintiff had no manipulative, visual, or communicative limitations, she was to avoid even moderate exposure to hazards such as machinery and heights. R. at 49. On October 3, 2012, another state agency consultant, W. Hakkarinen, M.D., expressed the same opinion about Plaintiff's physical RFC. R. at 58-60.

**B.     Hearing Testimony**

   **1.     Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in his decision:

> [Plaintiff] alleges that she is unable to work, due to her physical impairments. [Plaintiff] testified that she stopped working, due to pain from fibromyalgia and she alleged that this caused her to miss one to two days of work per week. She also testified that she cannot hold her 11-pound grandchild, and she experiences swelling two to three times per week. [Plaintiff] contended that she experiences two bad days per week, where she just lies in bed.

R. at 18; *see* R. at 27-38.

## 2. VE Testimony

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience with the RFC outlined below in Part III could perform Plaintiff's past relevant work and also could perform the sedentary jobs of appointment clerk, information clerk, and service dispatcher.[3] R. at 39-40. With the exception of her testimony regarding a sit-stand option, the VE's testimony was consistent with the *Dictionary of Occupational Titles*.[4] R. at 40. According to the VE, a 20% reduction in productivity or absenteeism of four days per month would preclude all work. R. at 41.

## III

## Summary of ALJ's Decision

On May 29, 2014, the ALJ found that, through the date last insured of December 31, 2013, Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of August 1, 2008; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was able to perform her

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

past relevant work as a program management analyst and payroll clerk; and (5) could perform other work in the national economy, such as an appointment clerk, information clerk, or service dispatcher. R. at 16-22. The ALJ thus found that she was not disabled from August 1, 2008, through the date last insured of December 31, 2013. R. at 22.

In so finding, the ALJ found that, through the date last insured, Plaintiff had the RFC

> to perform less than a full range of light work as defined in 20 CFR 404.1567(b). [Plaintiff] was able to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently from waist to chest level. [Plaintiff] had to avoid overhead work activity. [Plaintiff] could stand/walk six hours and sit six hours within an eight-hour workday, but she could sit/stand no longer than 15-30 minutes at a time before changing positions for a few minutes. [Plaintiff], furthermore, had to avoid crawling, kneeling, and climbing ladders, ropes, and scaffolds, but she could perform other postural movements on an occasional basis. [Plaintiff] had to avoid constant grasping, handling, fingering, and reaching. Additionally, [Plaintiff] had to avoid concentrated exposure to respiratory irritants, extreme temperatures, and humidity. Finally, [Plaintiff] had to avoid working around hazards such as moving machinery and unprotected heights.

R. at 17.

The ALJ also considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] allegations of debilitating subjective symptoms and limited functional ability are credible only to the extent of the established residual functional capacity assessment." R. at 18.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

---

appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff maintains that the ALJ erred in assessing the credibility of her subjective allegations. Pl.'s Mem. Supp. Mot. Summ. J. 3-8, ECF No. 15-1. She first contends that the ALJ erred in determining her RFC before assessing her credibility. *Id.* at 5. Indeed, the ALJ's finding in his decision that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] allegations of debilitating subjective symptoms and limited functional ability are credible only to the extent of the established residual functional capacity assessment" (R. at 18) "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (Posner, J.)). Rather, the ALJ should compare the claimant's alleged functional limitations from pain to the other evidence in the record, not to the claimant's RFC. *See id.* "[A]

9

claimant's pain and residual functional capacity are not separate assessments to be compared with each other. Rather, an ALJ is required to consider a claimant's pain as part of his analysis of residual functional capacity." *Id.*

The ALJ's use of the problematic boilerplate language would not require remand, however, if the ALJ "properly analyzed [Plaintiff's] credibility elsewhere." *Id.*; *see, e.g.*, *Sharp v. Colvin*, 660 F. App'x 251, 258-59 (4th Cir. 2016). Here, the ALJ found that objective medical evidence did not support Plaintiff's allegations. R. at 18-20. The ALJ found, among other things, that in May 2013 records showed that Plaintiff had normal musculoskeletal range of motion without tenderness and normal strength. R. at 19, 620. After her date last insured, treatment records in February 2014 showed that Plaintiff did not have pain in her muscles or joints and that she experienced no limitation in range of motion. R. at 18, 765. Substantial evidence thus supports the ALJ's finding that "the objective medical evidence, physical findings, sleep study, x-ray, ECG, EKG, and EGD do not support her allegations. [R. at 317, 382, 439, 445, 460, 469.] In addition, the testimony is not consistent with [Plaintiff's] denial of complaints in review of symptoms" (R. at 18). *See Craig*, 76 F.3d at 595; *Young v. Colvin*, Civil Action No. WGC-15-3295, 2016 WL 6433181, at *7-9 (D. Md. Oct. 31, 2016). Plaintiff's conservative course of treatment and non-compliance with her prescribed diabetic medication were also appropriate factors for the ALJ to consider in discounting her credibility (R. at 20). *See Dunn v. Colvin*, 607 F. App'x 264, 271-75 (4th Cir. 2015).

Plaintiff maintains, however, that the ALJ erred in evaluating her pain because she "need not provide objective evidence to substantiate the intensity, persistence, and limiting effects of her pain." Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 15-1. Whether "a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence

showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Dunn*, 607 F. App'x at 272 (quoting *Craig*, 76 F.3d at 594). "At this stage of the inquiry, the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment—a statutory requirement for entitlement to benefits—which could reasonably be expected to be the cause of the disabling pain asserted by the claimant." *Id.* at 272-73 (quoting *Craig*, 76 F.3d at 594). Second, after the first inquiry is complete, the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Craig*, 76 F.3d at 595; *see* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). "[T]his evaluation must take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.) . . . ." *Craig*, 76 F.3d at 595 (citation omitted); *see* 20 C.F.R. §§ 404.1529(c)(1)-(2), 416.929(c)(1)-(2). The ALJ must also take into account "any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Craig*, 76 F.3d at 595; *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see* Social Security Ruling[6] 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016).

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

Thus, contrary to Plaintiff's assertion,

> [a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]

*Craig*, 76 F.3d at 595; *see Hines*, 453 F.3d at 565 n.3.  Here, the ALJ found that, although Plaintiff's medically determinable impairments reasonably could be expected to cause her alleged symptoms, the objective medical evidence did not support the extent to which the symptoms allegedly limited her functioning.  Because "[t]he lack of objective medical evidence can serve as a partial basis in the credibility finding, provided it is not the sole basis for a credibility finding," *Young*, 2016 WL 6433181, at *7, Plaintiff's contention in this regard is unavailing.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here.  Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 18) is **GRANTED**.  Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**.  The Commissioner's final decision is **AFFIRMED**.  A separate order shall issue.

Date: March 6, 2017                                    /s/
                                                        Thomas M. DiGirolamo
                                                        United States Magistrate Judge